United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-21835-Civ-Scola |
| | ) |
| Norma Isabel Borgono, aka Norma | ) |
| Isabel Borgono Bedoya, Defendant. | ) |

## Order Denying Motion to Dismiss

The Government seeks to revoke Defendant Norma Isabel Borgono's naturalization based on fraud-related crimes she pleaded guilty to in 2011. (Compl., ECF No. 1.) Borgono argues the complaint should be dismissed because (1) the Court lacks subject-matter jurisdiction; (2) the complaint's accompanying affidavit is insufficient; (3) the complaint is barred by laches; (4) the statute of limitations has run on the Government's claim; and (5) all four counts in the complaint, for various reasons, fail to state a claim. (Def.'s Mot., ECF No. 15.) For the following reasons, the Court **denies** Borgono's motion (**ECF No. 15**).

### 1. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Motions to dismiss a complaint for lack of subject matter jurisdiction, as brought under Rule 12(b)(1), can consist of either a facial or factual attack on the complaint. *Id.* (citing *McElmurray v. Consol. Gov't of Augusta – Richmond Cnty,* 501 F.3d 1244, 1250 (11th Cir. 2007)). A facial attack requires the court to "merely look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," whereas a factual attack "challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony." *Id.* at 1233–34 (citing *McElmurray,* 501 F.3d at 1251). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Id.* at 1232 (citations omitted).

## 2. Background[1]

Before Borgono became a United States citizen, she engaged in criminal activity that she concealed during the naturalization process. (Compl. at 1.) Between April 2003 (at the latest) and April 2009, Borgono conspired, in her role as an office manager of an exporting company in Miami, to procure over $24 million in fraudulent loan transactions. (*Id.* at 1, ¶ 7.) When she filed her naturalization application in February 2007 and when she was interviewed in November 2007, however, she maintained that she had never committed a crime for which she had not been arrested. (*Id.* at 1.) Thereafter, in December 2011, Borgono pleaded guilty to conspiracy to defraud the United States and to commit mail fraud. (*Id.*) Despite the breadth of the overall scheme, Borgono was sentenced to only probation. (*Id.* at ¶ 19.) She was also ordered to pay only $5,000 in restitution to the bank from which the loans were obtained and to forfeit only $1,996.75. (*Id.*) The forfeited amount of $1,996.75 constituted the entirety of the proceeds of the conspiracy offense to which Borgono pleaded guilty. (*Id.*)

The Government now seeks to revoke Borgono's naturalization, alleging four counts. In count one, the Government contends Borgono illegally procured her naturalization because the crimes she committed, during the relevant statutory period, amounted to crimes involving moral turpitude, thus preventing her from establishing the good moral character required to

---

[1] The Court accepts the Government's allegations, as set forth below, as true for the purposes of evaluating Borgono's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

naturalize. (*Id..* at ¶¶ 51–60.) Count two maintains Borgono was unable to establish the requisite good moral character, necessary for naturalization, because her fraudulent conduct amounted to "unlawful acts" that adversely reflected on her moral character. (*Id.* at ¶¶ 61–70.) In count three, the Government alleges Borgono provided false testimony during the statutory period when she testified at her naturalization interview that she had never committed a crime for which she had not been arrested. (*Id.* at ¶¶ 71–77.) And, lastly, in count four, the Government claims Borgono obtained her naturalization by willfully misrepresenting and concealing her criminal history during the naturalization process. (*Id.* at ¶¶ 78–83.)

### 3. Discussion
### A. The Court has subject matter jurisdiction.

To begin with, Borgono argues the Court lacks jurisdiction over this case because it was not initiated by the United States Attorney for the Southern District of Florida. As Borgono points out, the Government's complaint is signed by Michael A. Celone—a U.S. Department of Justice trial attorney in the District Court Section of the Office of Immigration Litigation. (*Id.* at 18.) However, on this same signature page, the complaint recites it is "[r]espectfully submitted" by not only Celone but five others as well—including Benjamin G. Greenberg, the United States Attorney for the Southern District of Florida. These six individuals are described, on the signature page, collectively as "Attorneys for Plaintiff United States of America."

As a starting point, the Court notes this case is authorized and governed by 8 U.S.C. § 1451, which provides:

> It shall be the duty of the United States attorneys for the respective districts. . . to institute proceedings in any district court of the United States in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization . . . .

8 U.S.C.A. § 1451(a). The parties do not appear to dispute that the "provisions of th[is] statute set forth an exclusive procedure by which U.S. attorneys . . . may institute proceedings revoking naturalization." *In re Benjamin,* 217 F. App'x 165, 166 (3d Cir. 2007) (citing *United States v. Zucca,* 351 U.S. 91, 95 (1956)). The parties' dispute, rather, centers on whether the United States Attorney was sufficiently involved in the filing of this complaint to have "institute[d] the proceedings." The Court finds that he was.

First, by its plain terms, the complaint recites that it was "submitted" on behalf of, among others, Greenberg, the United States Attorney for the Southern District of Florida. (Compl. at 18.) The Court also finds that Greenberg is included in the complaint's cataloging of the six people listed as "Attorneys for Plaintiff United States of America." (*Id.*) This is enough to satisfy the jurisdictional requirements under § 1415. While, indeed, the better practice would be for the United States Attorney to actually sign the complaint, the Court will not elevate such a hypertechinical reliance on form over substance in this context. *See United States v. Olivar*, 648 Fed. App'x 675, 676 (9th Cir. 2016) (unpublished) (noting that "similar jurisdictional challenges should be avoided in the future by ensuring that the United States Attorney for the district has actually signed the complaint bringing denaturalization proceedings before the district court").

Further, here, the United States Attorney expressly authorized the Office of Immigration Litigation to file this complaint, stating, in a 2018 letter, "I hereby institute denaturalization proceedings against [Borgono] and request and authorize the Office of Immigration Litigation . . . to file the complaint and serve as lead counsel in this matter." (Pl.'s Resp., Ex. A, ECF No. 20-1, 4.) This too is "sufficient to satisfy jurisdictional requirements here." *Olivar*, 648 Fed. App'x at 676.

In sum, the Court is not persuaded by Borgono that the filing of this complaint by a trial attorney from the Office of Immigration Litigation runs afoul of 8 U.S.C. § 1451(a). Borgono's jurisdictional arguments in this regard are thus unavailing.

## B. The affidavit attached to the complaint is sufficient.

The civil denaturalization statute requires a complaint to be accompanied by an "affidavit showing good cause therefor." 8 U.S.C. § 1451(a). Here, the Government attached an affidavit of good cause prepared by United States Immigration and Customs Enforcement Special Agent David Jansen. (Compl., Ex. A, Jansen Aff., ECF No. 1-3.) Jansen's affidavit summarizes Borgono's criminal history and naturalization proceedings.

Borgono submits that Jansen's affidavit does not comply with the relevant statutory requirements. In support, she complains the affidavit is based only upon the affiant's "information and belief," rather than upon his personal knowledge, and that it contains multiple false or unknowable statements. The Court has reviewed the affidavit and finds Jansen's attestation, that the information in the affidavit is "true and correct" based upon "information and belief," is not fatal to the affidavit's efficacy. The Court

is also not persuaded by Borgono's argument that the affidavit contains false or unknowable statements.

First, immediately above Jansen's signature, he "declare[s] under penalty of perjury that the foregoing is true and correct." (*Id.* at 18.) This expressly complies with the requirement set forth in 28 U.S.C. § 1746 for an unsworn declaration that is to be treated "with like force and effect" as a sworn affidavit. Further, the affidavit required by § 1415(a) need not be based on the personal knowledge of the declarant but, as here, may be "based upon facts disclosed by official records . . . to which [the declarant] had access." *Nowak v. U.S.,* 356 U.S. 660, 662 (1958).

Jansen's affidavit of good cause asserts he is "responsible for conducting investigations of violations of immigration law and related federal states" and, in that capacity, he has "access to the official records of the DHS, including [Borgono's] immigration file." (Jansen Aff. at ¶ 1.) He then details various facts related to Borgono's naturalization application as well as her criminal activity. He goes on to explain how this criminal activity rendered her procurement of naturalization illegal. This is enough to establish the good cause necessary to institute these proceedings. *See United States v. Malik,* 15-9092-CM, 2015 WL 6871491, at *3 (D. Kan. Nov. 9, 2015) (finding that "[t]he Affidavit of Good Cause is required only to proceed with the case—not to determine whether the court should grant judgment as a matter of law" and that there is "no law indicating that . . . more demanding standards for [the] affidavit should apply at the initiation of a case"). To the extent Borgono quarrels with the veracity of or support for Jansen's statements, those arguments are more appropriately addressed on a motion for summary judgment or at trial.

## C. Laches does not apply in this case.

Next, Borgono submits the Government's complaint is barred by the doctrine of laches. Although the Court is sympathetic to Borgono's argument, her position is nonetheless unavailing. First, "the United States is not subject to the defense of laches in enforcing its rights." *United States v. Mandycz,* 447 F.3d 951, 964 (6th Cir. 2006) (quoting *United States v. Summerlin,* 310 U.S. 414, 416 (1940)) (applying this concept to denaturalization proceedings); *United States v. Arango,* 686 Fed. App'x 489, 491 (9th Cir. 2017) (Wallace, J., concurring) ("[I]n the immigration arena, people who have procured citizenship by way of fraud should not be allowed to escape denaturalization via the laches trap door.") Borgono has provided no express support for the application of laches in the context of denaturalization proceedings.

Second, a laches analysis requires a fact-intensive inquiry which the Court finds inappropriate to consider at the motion-to-dismiss stage of this litigation. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations or laches." *Billy Goat IP LLC v. Billy Goat Chip Co. LLC*, 17-CV-9154, 2018 WL 3740542, at *3 (N.D. Ill. Aug. 7, 2018) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). That is, "[a] court may only dismiss a claim as untimely under Rule 12(b)(6) if it is clear from the face of the complaint that it is hopelessly time-barred." *Billy Goat*, 2018 WL 3740542, at *3 (quotation omitted). In short, even if applicable, a laches analysis in this case would, in any event, be inappropriate at this time.

### D. There is no applicable statute of limitations for civil denaturalization actions.

Borgono further argues the complaint against her should be dismissed because the statute of limitations has run. In support, she contends that, as a general rule, all civil actions seeking "any civil fine, penalty, or forfeiture, pecuniary or otherwise" must be brought "within five years from the date when the claim first accrued." 28 U.S.C. § 2462. Accordingly, contends Borgono, because denaturalization is a penalty and a forfeiture, the five-year statute of limitations should apply in this case. The Court disagrees.

"Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud." *Costello v. United States*, 365 U.S. 265, 283 (1961). To be sure, the United States Supreme Court and various circuit courts have approved of the Government's instituting denaturalization proceedings against a defendant many decades after a defendant has naturalized. *See, e.g.*, *Kungys v. United States*, 485 U.S. 759, 764 (1988) (defendant naturalized in 1954; denaturalization complaint filed in 1982); *United States v. Szehinskyj*, 277 F.3d 331, 333 (3d Cir. 2002) (defendant naturalized in 1958; complaint filed in 1999). Borgono insists that denaturalization in this case is, without question, a penalty within the meaning of § 2462. And while the Court agrees that denaturalization, particularly here, is no doubt a harsh, if not devastating, result, there is simply no legal support for the application of § 2462's limitations period. *See, e.g.*, *United States v. Hauck*, 155 F.2d 141, 143 (2d Cir. 1946) ("Reliance on [28 U.S.C. § 2462] as the applicable statute of limitations is a hopeless clutching at straws; that statute is completely irrelevant."); *United States v. Hongyan Li*, 619 Fed. App'x 298, 303 (5th Cir. 2015) ("Because the denaturalization action is not punitive, the limitations period in § 2462 is

inapplicable."); *United States v. Rebelo*, 394 Fed. App'x 850, 853 (3d Cir. 2010) ("[T]he catch-all statute of limitations of 28 U.S.C. § 2462 . . . does not apply to denaturalization proceedings brought pursuant to 8 U.S.C. § 1451(a)."); *Trop v. Dulles*, 356 U.S. 86, 98 (1958) ("Denaturalization is not imposed to penalize the alien for having falsified his application for citizenship.") None of the cases Borgono cites supports a contrary conclusion.

### E. All four counts state claims upon which relief may be granted.

Lastly, Borgono contends all four counts set forth in the complaint fail to state claims upon which relief may be granted. Regarding count one, Borgono first argues the complaint fails to properly allege that she committed her crimes during the relevant statutory period—between February 6, 2002 and December 20, 2007. This is inaccurate. The complaint states: "From at least April 2003 until May 2009, [Borgono] conspired: (1) to obtain from the Ex-Im Bank more than $24 million in fraudulent loan[s]; (2) to falsify documents sent to U.S. banks and to the Ex-Im Bank; and (3) to misappropriate $14.1 million in loan proceeds." (Compl. at ¶ 8.) The complaint also pointedly avers Borgono participated in the conspiracy and the underlying fraud "during the statutory period." (*Id.* at ¶ 56.) Borgono's protestation that the complaint lacks specificity in this regard misses the mark.

Borgono additionally contends count one fails to state a claim because the complaint does not adequately allege that her crime involved moral turpitude. In support, Borgono points to the notion that a nonspecific conspiracy, alone, is not a crime involving moral turpitude unless the underlying substantive crime itself involves moral turpitude. (Def.'s Mot. at 5.) But, the Government, in its complaint, alleges Borgono pleaded guilty to conspiracy to *defraud* the United States and to commit mail *fraud*. (Compl. at ¶ 55.) These are crimes of moral turpitude. *See United States v. de Morais*, 713 Fed. App'x 540, 542 (9th Cir. 2017) (noting that "mail fraud [is] a crime involving moral turpitude"); *United States v. Al-Aqaili*, 550 Fed. App'x 356, 358 (8th Cir. 2014) (finding that "mail fraud without question contains the element of fraud and, thus, is a crime involving moral turpitude"); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (noting that "[g]enerally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude") (quotation omitted).

Next, Borgono insists count two should be dismissed because the Government alleges, as Borgono describes it, that "*any* unlawful act during the statutory period would have rendered Borgono a person of poor moral character." (Def.'s Mot. at 16 (emphasis in original).) This is not what the

Government alleges. The complaint sets forth that Borgono committed unlawful acts during the statutory period that, specifically, "reflected adversely on her moral character." (Compl. at ¶ 63.) The complaint then expressly describes the particular unlawful acts—conspiring to: obtain fraudulent loan proceeds; falsify bank documents; and misappropriate loan proceeds. (*Id.* at ¶ 64.) The Government simply has not alleged, as Borgono maintains, that any lawful act whatsoever would render Borgono a person of poor moral character.

Borgono maintains that count two should also be dismissed because the allegation that Borgono "cannot establish extenuating circumstances with regard to the conspiratorial conduct and [underlying] fraudulent acts" is conclusory, merely parroting the relevant legal standard. (Def.'s Mot. at 16.) The Court disagrees. As set forth in the complaint, Borgono pleaded guilty to conspiracy to defraud the United States and to commit mail fraud. These allegations, taken together, are far more than just the "threadbare recital of the elements of a cause of action" rejected by *Iqbal.* 556 U.S. at 678. As such they are enough to survive a motion to dismiss under Rule 12(b)(6).

Borgono's arguments regarding counts three and four echo many of the same claims she raises with respect to counts one and two. For example, she complains that Carnival fails to specify exactly when Borgono participated in criminal activity thereby leaving open the possibility that her participation in the conspiracy did not begin until *after* she had been naturalized. (Def.'s Mot. at 17–18.) Again, this is inaccurate. The complaint states Borgono engage in criminal activity "[f]rom *at least* April 2003 until May 2009." (Compl. at ¶ 8 (emphasis added).) The complaint also pointedly avers Borgono participated in the conspiracy and the underlying fraud "during the statutory period." (*Id.* at ¶ 74.) Borgono's characterization of these allegations as pointedly leaving open the possibility that Borgono's criminal activity did not begin until *after* she was naturalized is unavailing: the complaint's allegations describe on *ongoing* criminal enterprise, in which Borgono participated, that began, at the latest, in April 2003. Borgono's insistence that "the [c]omplaint does not allege that Borgono was involved in the scheme or had done anything criminal as of the date of her naturalization interview" is just wrong. As such, her motion to dismiss on these grounds fails.

The remainder of Borgono's objections regarding count three focus on evidentiary issues. She complains: there is no testimony presented in the complaint from the officer who actually conducted Borgono's naturalization interview; and it's possible Borgono's misrepresentations were not material to her naturalization or relied upon by the adjudicator. Delving into these alleged evidentiary shortcomings of the Government's case, even if valid, is premature

at this stage of the litigation. In sum, Borgono's contention that the complaint fails to state a claim is unavailing.

## 4. Conclusion

Consistent with the foregoing, the Court **denies** Borgono's motion to dismiss (**ECF No. 15**). Borgono must respond to the complaint by **April 29, 2019**.

**Done and ordered** at Miami, Florida, on April 18, 2019.

_____
Robert N. Scola, Jr.
United States District Judge